1
2
3
4
5

6          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF WASHINGTON**
7                      **AT SEATTLE**

8  SHAWNA G. BARTELL,                            NO.  C09-1154-RAJ-JPD

9                      Plaintiff,

10
11         v.                                    REPORT AND
                                                 RECOMMENDATION
12  MICHAEL J. ASTRUE, Commissioner of
    Social Security,
13
                       Defendant.
14

15

16         Plaintiff Shawna G. Bartell appeals the final decision of the Commissioner of the Social

17  Security Administration ("Commissioner") which denied her applications for Disability

18  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

19  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

20  administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

21  the Commissioner's decision be REVERSED and REMANDED FOR FURTHER

22  PROCEEDINGS.

23                     I.     FACTS AND PROCEDURAL HISTORY

24         At the time of her administrative hearing, plaintiff was a thirty-seven year-old woman

25  with a high school equivalency (GED) education.  Administrative Record ("AR") at 36.  Her

26

REPORT AND RECOMMENDATION - 1

past work experience includes employment as a cleaner in a hospital setting and as a sales attendant. *Id.* Plaintiff was last gainfully employed in 2005. AR at 26.

Plaintiff asserts that she is disabled due to degenerative disc disease of the lumbar spine, dysthymic disorder, borderline intellectual functioning, post traumatic stress disorder ("PTSD"), and panic order with agoraphobia. AR at 27. She asserts an onset date of June 20, 2005. AR at 26.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 24. Plaintiff requested a hearing, which took place on November 4, 2008. AR at 442-76. On December 1, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 24-38.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 5-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 4.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.  EVALUATING DISABILITY

As the claimant, Ms. Bartell bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On December 1, 2008, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since June 30, 2005, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, dysthymic disorder, borderline intellectual functioning (BIF), post traumatic stress disorder (PTSD) and panic disorder with agoraphobia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can lift occasionally 50 pounds maximum and 25 pounds frequently; stand and walk up to six hours out of 8 hour work day; sit up to six hours out of eight work day. She can do pushing or pulling and operation of hand and/or foot controls within the limits of lifting and carrying. There are no manipulative or environmental limitations. She can climb stairs, but she should never climb ladders, ropes or scaffolds. She has no limitations on stooping or bending and can occasional crawl. Additionally, the claimant retains the mental capacity to adequately perform the mental activities generally required by competitive remunerative, unskilled work as follows: understand, remember and carry out simple instructions compatible with unskilled work; would have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in

an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) with customary tolerances of employers rules regarding sick leave and absence. She can make judgment commensurate with the functions of unskilled work i.e., simple work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes all within a routine work setting not dealing with the general public as in a retail sales position. However, incidental contact with the general public is not precluded as would occur in cleaning positions such as in a hotel or motel.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on [redacted], 1971[2] and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2005 through the date of this decision.

12. The claimant's substance abuse disorder is not a factor material to the finding of disability.

AR at 26-37.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ Err by Finding that Plaintiff's Severe Impairments Did Not Constitute a Listing?

2. Did the ALJ Err in this Treatment of the Medical Evidence?

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

3. Did the ALJ Err in His Adverse Credibility Assessment?

4. Did the ALJ Err in His RFC Assessment By Concluding that Plaintiff Was Capable of Performing Work at the Medium Exertional Level?

Dkt. No. 14 at 8-19.

## VII.   DISCUSSION

### A.   The ALJ Did Not Err in Making an Adverse Credibility Determination

Plaintiff argues that the ALJ erred by failing to find plaintiff completely credible as she discussed her limitations. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p (1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Among other things, plaintiff asserted that she had a hard time leaving the house (AR at 452), that she spent most of the day in her room, sleeping, crying, or watching television, (AR at 453), and that she thought "all the time" about her father's death, as he had been shot by the police, although she did not witness the shooting (AR at 455-56). She also testified that she had anxiety attacks two or three times a week (AR at 456), but that medication helped her symptoms (AR at 457). She did not believe she could return to work as a sales attendant because she had a hard time being around people and because she was in pain. She estimated she could stand for only 10 to 15 minutes (AR at 461-62) and that she was uncomfortable with even very brief interaction with others. AR at 462-63.

The ALJ found that plaintiff's impairments were not as limiting as she claimed. He noted that plaintiff admitted she could care for all of her personal needs and hygiene, prepare meals, perform household chores, and care for her granddaughter. AR at 34, 94-95. She also reported that she left the house once or twice a day and had no problems shopping for food or household items twice a week for an hour, activities he concluded which were inconsistent with her self-report. AR at 96.

In addition to these activities, the ALJ determined that plaintiff's ability to work for several months after her alleged onset date was inconsistent with her claims of symptoms. AR at 34. Plaintiff worked for several months after her alleged onset date as a housekeeper. AR at 448-49. She testified that she was able to perform this job despite any alleged physical difficulties. AR at 449. It was not unreasonable for the ALJ to conclude that this detracted from her claim that she could not stand for more than 10 to 15 minutes (Tr. 462). *Id*. A tendency to exaggerate is a legitimate consideration in determining credibility. *Tonapetyan v. Halt*er, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ also found that plaintiff's claim that she became unable to work in June 2005 was undermined by her lack of employment history prior to her alleged onset date of disability. AR at 35. Plaintiff's earning records show that from 1991 to 2006, she earned over $10,000 only during

2 years.  The fact that plaintiff has "an 'extremely poor work history' and 'has shown little propensity to work in her lifetime,'" was a specific, clear, and convincing reason to discredit her claimed inability to work. *Thomas,* 278 F.3d at 959.  Further, the ALJ properly inferred that plaintiff's claims of disability, in light of her poor work history and receipt of free rent from her grandparents raised an issue of motivation and secondary gain.  Evidence of self limitation and lack of motivation by a claimant are appropriate considerations in determining the credibility of a claimant's excess symptom testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Finally, the ALJ also concluded plaintiff's claims of symptoms were not credible as they were not supported by findings in the medical evidence (Tr. 34).  For example, plaintiff's claim that she could only stand for 10 to 15 minutes is contradicted by Dr. Kim's assessment that Plaintiff could perform light work.  AR at 225, 462.  In judging credibility, the ALJ may consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* at 958-59, *quoting Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ's adverse credibility determination is supported by substantial evidence as that term is defined above.  The ALJ did not err.

B.     The ALJ Erred, In Part, In His Assessment of the Medical Evidence

At step 3 of the sequential evaluation process, the Commissioner must determine whether the claimant's "severe" impairments, individually or in combination, meet or equal an Appendix 1 Medical Listing and are "presumptively" disabling. 20 CFR §404.1520(d).  If a claimant's severe impairments meet or equal a listing, the claimant is found disabled, and the inquiry ends. *Id*.  The Listings for mental impairments are found at 20 CFR 404 Subpart P, Appendix 1, 12.00 et. seq.

At step 2 of the sequential evaluation process, the ALJ found that plaintiff has severe mental impairments of dysthymic disorder, borderline intellectual functioning ("BIF"), PTSD, and a panic disorder with agoraphobia.  AR at 27, Finding No. 3.  These impairments correlate

REPORT AND RECOMMENDATION - 9

to Listings 12.04 for affective disorders, 12.05 for mental retardation, and 12.06 for anxiety disorders. 20 CFR 404 Subpart P, Appendix 1, 12.04, 12.05, and 12.06. At step 3, the ALJ found that none of plaintiff's mental impairments meet or equal any listed impairment. AR at 30. Plaintiff assigns error to this finding. In addition, plaintiff claims the ALJ erred by ignoring Dr. Harmon's conclusion that plaintiff "appeared" to meet the criteria for a 12.04 and 12.02 Listing.

Although the ALJ stated that "No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment," (AR at 30), that conclusion is incorrect. The Commissioner concedes that Drs. Parlatore, Lind, Ms. Gibson and Ms. LaHatt provided opinions that would be equivalent to the severity criteria of the Commissioner's listings for an affective disorder (12.04) and an anxiety disorder (12.06) Dkt. No. 15 at 13. However, the Commissioner argues that the ALJ properly rejected these opinions. As to the separate claim of a Listing pursuant to 12.05(c), the Commissioner claims the plaintiff is relying upon an incorrect IQ score. *Id.* at 14.

### *1.   12.04 and 12.06 Listings*

Whether the ALJ erred by failing to find a 12.04 or 12.06 Listing depends upon whether the ALJ properly evaluated the medical evidence offered by Drs. Parlatore, Lind, Ms. Gibson and Ms. LaHatt. If the ALJ evaluated the opinions properly, then the statement included in his opinion that no examining physician found that plaintiff's metal impairments met or equaled a Listing is immaterial. If the ALJ did not properly evaluate the medical opinions, this case must be reversed.

### *2.   Standards for Review of Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating

physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

       a.  Anselm Parlatore, M.D.

In July 2005, Dr. Parlatore evaluated plaintiff.  AR at 172-75.  He diagnosed plaintiff with PTSD, panic disorder and dsythmia.  AR at 173.  He found that she had only mild cognitive limitations, but also found she would have marked limitations in her ability to relate to co-workers and supervisors and the public, and had severe limitations regarding responding appropriately to pressures in the workplace.  AR at 174.  In July 2008, Dr. Parlatore completed a questionnaire, stating plaintiff had affective disorder and anxiety disorder that each resulted in marked restrictions in activities of daily living, marked difficulties in social functioning, frequent deficiencies of concentration, persistence or pace, and frequent episodes of decompensation, each of extended duration.  AR at 210-15.

       b.  Michelle Gibson, ARNP

Nurse Gibson evaluated plaintiff in March 2008.  Plaintiff was initially referred in February 2007, but plaintiff missed her evaluation at that time, and also missed 8 out of 11 scheduled case management appointments.  AR at 341.  In her 2008 evaluation, Nurse Gibson diagnosed plaintiff with major depressive episode, recurrent without psychotic features, PTSD, and amphetamine abuse, in remission.  She assigned a Global assessment function rating ("GAF") of 50.[3]  Nurse Gibson also provided answers to written interrogatories in October

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*  A GAF score of 31-40 indicates "some impairment in reality testing and

2008, opining that plaintiff's depression resulted in frequent deficiencies in concentration, persistence or pace and that her PTSD results in extreme difficulties in maintaining social functioning.  AR at 401-02.

        c.  Karen LaHatt, LMHC

Ms. LaHatt is a licensed mental health counselor who evaluated plaintiff.  In written interrogatories, she opined that plaintiff's depression resulted in marked limitations of social functioning; and constant deficiencies of concentration, persistence or pace; and that her PTSD results in marked limitations in social functioning and marked deficiencies of concentration. AR at 249, 252.

        d.  The ALJ Erred Regarding Dr. Parlatore, Nurse Gibson and Ms. LaHatt

The ALJ did not state what weight he gave to the opinions of Dr. Parlatore, Nurse Gibson and Ms. LaHatt, but he evidently rejected them.

> As for the opinion evidence, Dr. Parlatore, the claimant's therapist, and the claimant's nurse practitioner have all completed evaluations of the claimant, but they have not provided supportive objective evidence from their evaluations to support the limitations that they have assessed (Exhibits 3F; 8F; 11F; 21F).  The claimant's activities suggest that she has the ability to get along with others, to maintain attention and concentration and deal with some stress [better] than these providers have indicated.  The claimant has demonstrated a good ability to maintain appropriate behavior in every evaluation in the record.

AR at 35.

Plaintiff claims that the ALJ's statement that the providers failed to provide supportive objective evidence is not supported by the record.  She is correct.  Dr. Parlatore completed Section D of the Department of Social and Health Services ("DSHS") form setting forth his clinical findings.  AR at 172-75.  Nurse Gibson provided her psychiatric evaluations.  AR at 342.  Ms. LaHatt stated that her assessments were based in part on plaintiff's hyper-startle

---

communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood . . . ."  *Id.*

response and hyper-vigilance.  AR at 253.  Although the ALJ also cited reasons that could support his ultimate conclusions relating to credibility, reliance on self-reporting, and daily activities, a major justification given by the ALJ does not withstand scrutiny.  For this reason, this case must be remanded for further proceedings to reevaluate the medical opinions of Dr. Parlatore, Nurse Gibson and Ms. LaHatt.

### 3. 12.05(c) Listing

To meet the requirements of 12.05(c), a claimant must have a valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  20 CFR 404 Subpart P, Appendix 1, Listing 12.05.  Here, the ALJ found that the "'paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  AR at 32.  Plaintiff claims the ALJ erred asserting plaintiff had a severe mental impairment of borderline intellectual functioning based on Dr. Lind's report, which included a "Full Scale IQ of 67 (borderline)," (AR at 27), in addition to severe physical impairments.  However, the ALJ misreported Dr. Lind's results.  A review of Dr. Lind's report confirms the Commissioner's argument that the ALJ misread Dr. Lind's report, and that Dr. Lind reported a Full Scale IQ of 74 for plaintiff. AR at 170.  In her reply, plaintiff does not contend otherwise.  The ALJ did not err in concluding that plaintiff did not meet a 12.05(c) Listing.

### 4. 12.02 Listing

On September 18, 2008, Dr. Dana Harmon completed a Certification for Medicaid, stating:

> Shawna appears to meet the SSA criteria for 12.04, Affective Disorders, and 12.02, Organic Mental Disorders.  Dr. Lind's psychological evaluation diagnosed her with a Major Depressive Disorder and borderline intellectual functioning, with a "marked" level of severity.  Shawna's problems with school

REPORT AND RECOMMENDATION - 14

and learning and need for special education services would also be significant obstacles to her employment or vocational rehabilitation.

AR at 388.

It appears that Dr. Harmon's opinions are based on his review of Dr. Lind's psychological evaluation. To a certain extent, therefore, it would seem that Dr. Harmon's conclusions are dependent upon Dr. Lind's conclusions. Although this may seem self-evident, the ALJ did not make reference to the opinion of Dr. Harmon. Dr. Harmon's opinion is significant probative evidence, and the failure to discuss this evidence requires a remand. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

C. The ALJ Did Not Err In His Assessment of the Medical Opinions of Ellen Walker Lind, Ph.D

In January and February 2006, Dr. Lind performed a psychological evaluation of plaintiff. AR 166-171. She diagnosed plaintiff with PTSD, panic disorder without agoraphobia, dysthymic disorder, and BIF. She assessed plaintiff's GAF at 38. The ALJ accorded no weight to Dr. Lind's opinion.

> The undersigned gives no weight to Dr. Lind's opinion as she apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision there exist reasons for questioning the reliability of the claimant's subjective complaints. Furthermore, there is no supportive objective documentation for these opinions that the claimant has very limited functional ability.

AR at 35.

Although Dr. Lind performed some intelligence testing (AR at 170-71), the ALJ did not err by rejecting her opinions. Plaintiff argues that the finding that Dr. Lind relied upon the subjective reports of symptoms and limitations by plaintiff for support is speculation. That assessment is not accurate. Dr. Lind's report is replete with references to self-reports. AR 166-169. During her evaluation, she was reported to be cooperative, and oriented to person, place, time and situation. She demonstrated no evidence of psychomotor agitation or

REPORT AND RECOMMENDATION - 15

retardation. Her speech was normal. She was able to name current and past presidents and recalled two of three objects after a five-minute delay. She recalled seven digits forward and four backwards. She was able to complete a serial counting task to 40 with one error, and correctly spelled the word "world" forward and backward. Her abstract reasoning skills were estimated to be below average.

Nevertheless, she self-reported to Dr. Lind that she suffered from depression for a long time, that she had panic attacks that caused her to cry and to be unable to breathe, that she had "ongoing" problems with PTSD, and that her current family situation was quite stressful. AR at 166-170. In September 2008, plaintiff reported fatigue, low energy, and that "focus is difficult." AR at 384. Notwithstanding the self-reports of focus difficulties, she drove herself to her appointment, she arrived on time, there was no evidence of psychomotor agitation or retardation, and her speech was reported normal. She was also able to remember 3 out of 3 objects after 5 minutes, and could remember 6 digits forward and 4 digits backwards. AR at 386.

The ALJ may reject a doctor's opinion when it is "conclusory, brief, and unsupported by the record as a whole. . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F. 3d 1190, 1195 (9th Cir. 2004). Moreover, in light of the adverse credibility determination made by the ALJ, it was not inappropriate for the ALJ to reject reports based on a claimant's self-reporting. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir 2008). The ALJ did not err by assigning no weight to the opinion of Dr. Lind.

    D.    <u>The ALJ Erred in His Assessment of the Opinion of Chi-Na Kim, M.D., but the Error is Harmless</u>

Plaintiff was evaluated by Dr. Kim in 2005, as part of a DSHS medical review. AR at 332-27. Dr. Kim concluded that plaintiff was able to work, but restricted the work to the light exertional level. The ALJ rejected Dr. Kim's assessment.

> Dr. Kim's opinions are not granted probative weight as he saw the claimant only once for a short evaluation for general assistance. Further, there lacks a

REPORT AND RECOMMENDATION - 16

> narrative discussion and supportive documentation for the opinion of limiting the claimant to light work.

AR at 35. The ALJ erred when he concluded that there no objective evidence. Dr. Kim noted in the report that there was limited range of motion in plaintiff's back, especially her lower back, and noted "Leg raise [positive] Left 60 degrees." AR at 224. However, Dr. Kim also reported the severity rating was only "mild." AR at 225. The mild severity rating was not noted by the ALJ as the reason for rejecting Dr. Kim's opinion, and the reasons offered are somewhat contradicted by the record. Accordingly, the ALJ erred in his treatment of Dr. Kim's opinion.

This error, however, is harmless. Because he did not give probative weight to Dr. Kim's opinion, the ALJ concluded that plaintiff had an RFC that permitted her to engage in work with a medium exertional capacity. AR at 32. Nevertheless, at Step 5 of the sequential disability evaluation process, based on the Vocational Expert ("VE") opinion, the ALJ concluded that there were jobs in the national economy that plaintiff could perform, but each of the jobs identified required only a "Light" exertional capacity, consistent with Dr. Kim's opinion.

There was no requirement that the ALJ adopt Dr. Kim's limitation to a job involving only a "Light" exertional capacity. However, the ALJ's proffered reasons for rejecting Dr. Kim's opinions do not withstand scrutiny. Nevertheless, because the jobs found at Step 5 were consistent with Dr. Kim's conclusions, any error that the ALJ committed must be considered harmless.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. Specifically, the undersigned recommends that the Commissioner's adverse credibility determination, the finding that plaintiff did not meet a Listing, pursuant to 12.05(c),

and the assessment of Dr. Lind's opinion be affirmed. In addition, the undersigned further recommends that the error in treatment of Dr. Kim's opinion be treated as harmless error.

The undersigned also recommends that on remand, the Commissioner be directed to reconsider the medial opinions of Dr. Parlatore, Nurse Gibson and Ms LaHatt, in light of the objective evidence that supports the opinions generally, and specifically whether the plaintiff's impairments are equivalent to a 12.04 and 12.06 Listing. Finally, the undersigned recommends that the Commissioner be directed to review the medical opinion of Dr. Harmon, and assess whether plaintiff's impairments are the equivalent to a Listing pursuant to 12.02 and 12.04.

A proposed order accompanies this Report and Recommendation.

DATED this 30th day of April, 2010.

*[Signature: James P. Donohue]*

JAMES P. DONOHUE
United States Magistrate Judge
REPORT AND RECOMMENDATION - 18